# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL TOLOMEO | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| | ) | No. 15 C 8118 |
| BCL-SHEFFIELD, LLC, and | ) | |
| BCL-BURR RIDGE, LLC, | ) | Judge Sara L. Ellis |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEMINI INTERNATIONAL, INC., | ) | |
| AMERICAN GOURMET SPECIALTIES, | ) | |
| LTD., TOLFLEX ENGINEERING | ) | |
| SYSTEMS, CO., and LAURA TOMEO, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Attempting to bring the assets of Gemini International ("Gemini"), American Gourmet Specialties ("AGS"), Tolflex Engineering Systems ("Tolflex") (the "Corporate Defendants"), and Laura Tolomeo ("Laura") (collectively "Defendants") into the Debtor's, Michael Tolomeo's, bankruptcy estate, BCL-Sheffield and BCL-Burr Ridge (collectively "Plaintiffs") filed an adversary action against Defendants asking the bankruptcy court to find that Defendants were alter egos of Debtor and thereby declare Defendants' assets part of the Debtor's bankruptcy estate. Plaintiffs further asked the bankruptcy court to pierce the Defendants' corporate veils and direct turnover of the Defendants' assets to the bankruptcy trustee ("Trustee"). After Defendants answered the complaint, Plaintiffs filed for judgment on the pleadings. Presently before the Court is the bankruptcy court's Proposed Findings of Fact and Conclusions of Law

recommending that Plaintiffs' motion be granted. Defendants timely filed several objections to the bankruptcy court's findings. Specifically, Defendants object to the bankruptcy court's proposed findings that Plaintiffs have standing to bring their claims, that the bankruptcy court has subject matter jurisdiction, and that the undisputed facts warrant granting Plaintiffs' motion for judgment on the pleadings. Because the Court finds that Plaintiffs have standing to bring their claims, that the bankruptcy court had jurisdiction, and that the undisputed facts warrant granting Plaintiffs judgment on the pleadings, the Court overrules Defendants' objections and adopts the bankruptcy court's Proposed Findings of Fact and Conclusions of Law.

## BACKGROUND

The Parties generally do not dispute the facts as stated by the Bankruptcy Court.[1] They are adopted as follows:

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 11, 2013 (the "Petition Date"). Subsequently, the Debtor's case was converted from

---

[1] Defendants make two objections to the bankruptcy court's proposed findings of fact: (1) that the bankruptcy court inappropriately considered Debtor's testimony outside of the pleadings, and (2) that the bankruptcy court deemed certain facts undisputed that are disputed. First, Defendants do not specify which of Debtor's statements the bankruptcy court improperly considered. The Court acknowledges that the bankruptcy court's proposed rulings makes several references to Debtor's testimony provided during the underlying bankruptcy case. However, many of these statements were admitted to in Defendants' Answer to the Complaint. *See* Defendants' Answer to Plaintiffs' Complaint, Doc. 32, 14-ap-802. Regardless, because this is a motion for judgment on the pleadings, the Court disregards all references to evidence outside of the pleadings. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003).
    Second, the "facts" Defendants argue are disputed are not facts but legal conclusions based on undisputed facts. For example, Defendants object to the bankruptcy court's statement "the facts set forth in Plaintiffs' motion sufficiently demonstrate a unity of interest and control such that the separate personalities of the corporations and the Debtor no longer exist. The Defendants do not dispute those facts." Doc. 16 at 11. Defendants object arguing that they dispute "that the separate personalities of any of the Defendants and the Debtors ever ceased to exist." *Id*. But what Defendants are objecting to is the legal conclusion reached by the bankruptcy court, not the underlying facts which led to that conclusion. Either way, the Court's review of this matter is *de novo* and has included only those facts that are undisputed. Defendants' objection on this basis is overruled.

chapter 11 to chapter 7 on September 16, 2013 (the "Conversion Date"), and the Trustee was appointed shortly thereafter.

Prior to and as of the Petition Date, Debtor was married to Laura. The Corporate Defendants are or once were Illinois corporations owned solely by Laura.

Gemini is listed as active by the Illinois Secretary of State. In addition to being Gemini's sole shareholder, Laura is one of two officers of the corporation, the secretary; Debtor is Gemini's president. The Secretary of State lists Gemini's business address as the same one for the Debtor and Laura's residence. Both AGS and Tolflex have been dissolved. Up and until its dissolution, Debtor was AGS's president.

Although Laura is, or formerly was, the owner and sole shareholder of the Corporate Defendants, she has no income or substantial funds of her own. Laura has had serious health issues for several years and, as a result, has had to rely on Debtor, as well as her adult children, in all aspects of her daily life. Thus, Debtor alone has run the businesses of the Corporate Defendants, rather than Laura controlling the Corporate Defendants.

Specifically, Debtor acted as president of both Gemini and AGS. In that capacity, he was responsible for collecting $9000 per month in rent from AGS in connection with its rental of a property owned by Gemini. At some point prior to the Petition Date, AGS's rent was reduced because AGS was paying Gemini's expenses in connection with another property, including paying the mortgage on that property. Additionally, the Debtor caused Gemini to enter into a lease with Howich, a corporation owned and controlled by Debtor, despite the fact that Howich had ceased to exist as a separate legal entity many years before the execution of the lease.

As to the management of both the Corporate Defendants and Debtor's personal assets, AGS and Gemini shared a single checking account at MB Financial Bank (the "Gemini

Account"). Gemini account statements list a number of account holders at various times, including AGS and Tolflex. The Gemini Account was used to pay the bills of Gemini and AGS interchangeably, as well as to pay bills owed by Laura and Debtor personally, including mortgage payments on their residence and funds advanced to Debtor's bankruptcy attorney. Additionally, Debtor and Laura would periodically take money from AGS, and they both received payroll checks from AGS, even though neither of them worked for AGS. Prior to the Petition Date, Debtor did not have his own checking or savings account, nor did he have a credit card in his own name.

With respect to the maintenance of company records and documents, Gemini did not file a tax return for the years 2008–2012.

Pursuant to the Operating Reports and Reporting Requirements guidelines, immediately upon filing a chapter 11 case, a debtor-in-possession is required to close previous bank accounts and open one or more accounts designated as debtor-in-possession ("DIP") accounts. Pursuant to these guidelines, Debtor opened two accounts at First Personal Bank in January of 2013. One account was opened under Debtor's name (the "DIP Account"), the other account was opened under the name of AGS (the "AGS Account"). Although he was required to use the DIP account for post-petition payments, Debtor continued to pay his personal financial obligations from the Gemini Account and also deposited his Social Security checks into the Gemini Account. After the Conversion Date, the Debtor withdrew nearly all of the funds in his DIP account and deposited them into either the Gemini or AGS account. Debtor also deposited his paychecks from AGS into his AGS account rather than the DIP account he was obligated to use. And even after the AGS account was created, the Debtor continued to use the Gemini Account to pay AGS's business expenses.

## LEGAL STANDARD

"A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to" a bankruptcy case. 28 U.S.C. § 157(c)(1). In such a proceeding, the bankruptcy judge will issue proposed findings of fact and conclusions of law to the district court for its review. *Id*. The district court shall then review *de novo* "any portion of the findings of fact or conclusions of law to which specific written objection has been made." *Brandt v. Charter Airlines, LLC*, No. 14 C 5102, 2015 WL 4764145, at *3 (N.D. Ill. Aug. 12, 2015) (citing Fed. R. Bank. P. 9033(d); *Exec. Benefits Agency v. Arkinson*, -- U.S. --, 134 S. Ct. 2165, 2173 (2014)).

## ANALYSIS

Defendants raise several objections to the bankruptcy court's proposed rulings. As previously discussed, Defendants generally do not object to the bankruptcy court's proposed findings of fact. Rather, Defendants make the three following legal objections: (1) Plaintiffs lack standing to bring the adversary action, (2) the bankruptcy court lacks subject matter jurisdiction to hear the adversary proceeding, and (3) there are material questions of fact which preclude granting judgment on the pleadings. Defendants' arguments are addressed in turn.

**I.      Standing**

Defendants argue that Plaintiffs lack standing to bring their alter ego claims for two reasons.[2] First, relying on *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 318–19 (Bankr. N.D. Ill. 2004), Defendants argue that under § 544(a)(2) of the Bankruptcy Code only the Trustee has standing to pursue these claims. The Court acknowledges that the court in *In re*

---

[2] Defendants raise a third argument against standing – that Plaintiffs should be judicially estopped from arguing that the Trustee assigned its alter ego claims to them because they previously took the opposite position. Defendants fail, however, to cite to anything in the record that supports this position. Defendants' argument is thus waived. *See Makowski v. SmithAmundsen LLC*, No. 08 C 6912, 2012 WL 3643909, at *3 (N.D. Ill. Aug. 21, 2012) (summarily overruling objection that is conclusory and unsupported); *see also United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("In this circuit, unsupported and undeveloped arguments are waived.").

5

*Doctors* held that only a bankruptcy trustee has standing to assert alter ego claims. But the court in *In re Doctors Hospital* was not presented with, and therefore did not consider, the allegation present in this case – that the Trustee assigned his right to pursue alter ego claims to a third party. *In re Doctors*, 308 B.R. 311. The holding in *In re Doctors* is thus inapplicable to this case. The Court is not aware of any authority, nor have Defendants put forth any, that prohibits the Trustee from assigning his right to pursue alter ego claims to a third party. To the contrary, there is case law that explicitly holds trustees may sell, assign, or otherwise transfer their interests in litigation as an asset of the estate. *See In re Nicole Energy Servs., Inc.,* 385 B.R. 201, 230 (S.D. Ohio 2008). It is axiomatic that if a trustee sells, assigns, or otherwise transfers its interest in litigation to a third party, that third party is vested with the requisite standing to pursue the litigation.

The Court is left to determine whether an agreement executed by the Trustee and Plaintiffs transferred the Trustee's right to pursue alter ego claims to Plaintiffs. Defendants argue that it did not. Instead, Defendants argue that the agreement specifically reserved the Trustee's right to pursue alter ego claims. The Court disagrees.

The agreement states in relevant part:

> [T]he Trustee, on behalf of the Estate, hereby…
>
> b. Assigns to [Plaintiffs] any and all claims he has or may have against (a) Gemini International, Inc. ("Gemini"); (b) AGS Limited (a/k/a American Gourmet Services, Inc., a/k/a AGS, Inc., a/k/a American Gourmet Specialties, a/k/a Sopranos Restaurant or Sopranos ("Sopranos"); and (c) Laura Tolomeo, the Debtor's spouse ("Mrs. Tolomeo" and, collectively with Sopranos and Gemini, the "Related Entities"), with the exception of the Trustee Retained Claims, identified in Section E(c) of this Stipulation. For the sake of clarity, the parties specifically contemplate that [Plaintiffs] may (but [are] not under any obligation to) bring an action, if any exists, against one or more of the Related Entities and that such action(s) seeking, among other things, to bring the assets of one or more of the Related Parties into the Estate (whether under a theory of alter ego or otherwise). Any and all

6

> recoveries of such action(s) shall belong to [Plaintiffs] and not to the trustee or the Estate.
>
> c. ***Notwithstanding** any recitals or provisions herein*, the Trustee does **not** assign to [Plaintiffs], and specifically reserves all rights to any and all Estate avoidance actions, claims…and/or liabilities that the Trustee has or may have…which may be asserted pursuant to 11 USC §§ 544-550 of the Bankruptcy Code[.]

Doc. 16, Ex. A at 6. Defendants argue that subsection (c) explicitly reserves the Trustee's right to pursue avoidance claims, like Plaintiffs' alter ego claims. Defendants argue further that because subsection (c) begins with the word "notwithstanding," this paragraph controls the interpretation of the agreement and overrides any conflicting provisions of the agreement. But Defendants do not have standing to challenge the interpretation of the agreement between Plaintiffs and the Trustee. Defendants were neither a party to, nor a third-party beneficiary of, the agreement. There is seemingly no dispute among the parties to the agreement as to the interpretation of the assignment provisions. Defendants therefore do not have standing to contest the Parties' agreed-upon interpretation of the agreement. *See Syndia Corp. v. Gillete Co.*, No. 01 C 2485, 2002 WL 548843, at *4 (N.D. Ill. Apr. 11, 2002) (citing *James v. Zurich-American Ins.,* 203 F.3d 250, 256-58 (3rd Cir. 2000)).

Even if the Court found that Defendants had standing to contest the Parties' interpretation of the agreement, the Court would still find this reading of the assignment provisions to be incorrect. "[U]nder Illinois law, contracts are interpreted according to the 'four corners' rule[.]" *See Camico Mut. Ins. Co. v. Citizens Bank,* 474 F.3d 989, 992–93 (7th Cir. 2007). This means that a contract is interpreted by analyzing the language used. *See Wehrenberg v. Fed. Signal Corp.*, No. 06 C 487, 2008 WL 4874150, at *1 (N.D. Ill. June 13, 2008) (citing *Camico,* 474 F.3d at 992–93). "If that language is free of ambiguity, the Court interprets the contract's terms with reference to their plain meanings (unless otherwise defined) and does not draw on extrinsic

7

evidence." *Wehrenberg,* 2008 WL 4874150, at *1. The Court agrees with Defendants that the terms of the agreement are unambiguous. Defendants' reading of the agreement, however, is incorrect.

As previously discussed, trustees may sell, assign, or otherwise transfer their interests in litigation as an asset of the estate. *See In re Nicole Energy Servs., Inc.,* 385 B.R. at 230. That is precisely what the Trustee did. He expressly assigned his right to pursue alter ego claims against Defendants to Plaintiffs. Doc. 16, Ex. A at 6. The Court does not read subsection (c) as overriding this assignment. Subsection (b) is a specific provision; it specifically lists certain actions that the Trustee assigned to Plaintiffs, including alter ego claims. Subsection (c) is a general provision; it explains general types of claims reserved for the Trustee. "[W]here a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Cencula v. John Alden Life Ins. Co.*, No. 98 C 0562, 2000 WL 336522, at *4 (N.D. Ill. Mar. 28, 2000). Furthermore, subsection (b) provides that "[a]ny and all recoveries of [alter ego] action(s) shall belong to [Plaintiffs] and not to the Trustee or the Estate." Doc. 16 at 4. This language clearly reflects the intent of the Parties that Plaintiffs shall not only have the right to pursue alter ego claims, but shall have the right to retain the recovery stemming from those actions. The Court thus adopts the bankruptcy court's conclusion that Plaintiffs have standing to pursue this adversary proceeding.

## II.  Subject Matter Jurisdiction

Defendants argue in the alternative that if the Court finds that Plaintiffs have standing to pursue their claims, then the bankruptcy court lacks subject matter jurisdiction to adjudicate them. This is so, Defendants argue, because if the recovery from the adversary claims was assigned to Plaintiffs, then the outcome of this proceeding will not affect the assets of the Estate.

8

Because a bankruptcy court's jurisdiction is limited to matters that will affect the assets of the estate, the assignment, Defendants argue, stripped the bankruptcy court of its jurisdiction to hear the matter. *See In the Matter of Xonics, Inc*., 813 F.2d 127 (7th Cir. 1987) ("There is jurisdiction under § 157(c)(1) only when the dispute is "related to" the bankruptcy–meaning that it affects the amount of property available for distribution or the allocation of property among creditors."); *see also In the Matter of Kubly*, 818 F.2d 643, 645 (7th Cir. 1987) ("disputes among creditors of a bankrupt come within the federal bankruptcy jurisdiction only if they involve property of the estate").

Defendants misunderstand the nature of the adversary proceeding. In filing this adversary proceeding, Plaintiffs are attempting to bring Defendants' assets within Debtor's Estate. The proceeding therefore has the potential to affect the assets of the estate and the bankruptcy court has jurisdiction to hear it. *See Xonics*, 813 F.2d at 131; *see also Kubly*, 818 F.2d at 645.

While not clearly articulated, Defendants also seem to argue that the bankruptcy court lacked subject matter jurisdiction because the present adversary complaint is not a core proceeding under 28 U.S.C. § 157. But the bankruptcy court's jurisdiction is not limited to core proceedings. It also has the jurisdiction to hear "related to" cases – "disputes that affect the payments to the bankrupt's other creditors or the administration of the bankrupt's estate." *Kubly*, 818 F.2d at 645 (citing *Xonics*, 813 F.2d 127). Granted, a bankruptcy court's authority in "related to" cases is limited. In "related to" proceedings, a bankruptcy court may only propose findings of fact and conclusions of law to the district court, which will then enter a final judgment. *See* 28 U.S.C. § 157(c)(1). That is what the bankruptcy court did in this case. The Court adopts the bankruptcy court's finding of subject matter jurisdiction.

9

## IV. Merits

Finally, Defendants object to the bankruptcy court's conclusion that the undisputed facts warrant granting judgment in Plaintiffs' favor. The substance of Defendants' arguments, however, extend beyond asserting the existence of disputed material facts. Specifically, Defendants make the following objections: (1) the bankruptcy court applied the wrong legal standard in determining whether Defendants' corporate veils should be pierced, (2) the facts do not support finding Defendants to be Debtor's alter ego, and (3) neither the facts nor the law support piercing the Defendants' corporate veils.[3]

Defendants first argue that the bankruptcy court applied the wrong legal standard, using a "strongly suggest" standard instead of the required "substantial showing" standard for the corporate veil analysis. Doc. 16 at 13. The Court overrules this objection finding it to be a distinction without a difference. Defendants fail to point to any case law making a legal distinction between "strongly suggest" and "substantial showing." Furthermore, the bankruptcy court cited to and applied the "substantial showing" standard. *See* Doc. 1 at 9 ("A party seeking to pierce the corporate veil has the burden of making a substantial showing…" (quoting *In re Estate of Wallen*, 633 N.E.2d 1350, 1357, 262 Ill. App. 3d 61, 199 Ill. Dec. 359 (1994)); *see also id.* at 14 ("[T]he uncontroverted facts establish the "unity of interest and ownership").

The Court is left to determine whether the undisputed facts establish that Defendants are the alter egos of Debtor. "The alter ego doctrine is used in certain situations to displace the basic principle of the law of corporations that a corporation and its shareholders are separate legal entities with limited liabilities." *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987). In other words, by asserting that Defendants are Debtors' alter egos,

---

[3] Defendants also argue that the bankruptcy court improperly considered statements made by Debtor outside of the pleadings and deemed certain facts admitted that are disputed. As stated in footnote 1, the Court has only considered those facts that are contained in the pleadings and that are undisputed.

Plaintiffs allege that Defendants and Debtor are the same entity for legal purposes. *See Bd. of Trs. v. Elite Erectors*, 212 F.3d 1031, 1038 (7th Cir. 2000). To prove that Defendants are the alter egos of Debtor, Plaintiffs must establish two things: first, "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Koch Refining*, 831 F.2d at 1345.[4] When determining whether there is sufficient unity of interest and ownership, courts may consider several factors including: "commingling of funds, assets, or identities…failure to operate at arm's length; failure to comply with corporate formalities," *Koch Refining*, 831 F.2d at 1345, as well as nonfunctioning of other officers and directors, and the corporation being a façade for the operation of the dominant shareholders, *Dimmitt & Owens Finc'l, Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 738 (N.D. Ill. 2002). The undisputed facts in this case establish that many, if not all, of these factors are satisfied.

First, the undisputed facts demonstrate that for the past several years, the Corporate Defendants were managed and controlled exclusively by Debtor. Because of Laura's health problems, she was not involved in the running of the Corporate Defendants. Defendants' Answer ("Defts.' Ans.") at 10–11.[5] Debtor thus ran the businesses as if they were his own. As President of both AGS and Gemini, Debtor handled the daily operations of the companies. *Id.* He also handled the finances of the two companies and entered into contracts on behalf of the Corporate Defendants. *Id.* at 10, 14–15. The undisputed facts show that the Corporate

---

[4] Defendants only object to the bankruptcy court's proposed conclusion that there was unity of interest and ownership between Debtor and Defendants. Defendants do not object to the bankruptcy court's conclusion that "adher[ing] to the fiction of separate corporate existence[s] would sanction a fraud or promote justice." *Koch Refining*, 831 F.2d at 1345. The Court limits its analysis accordingly.
[5] Defendants' Answer to Plaintiffs' Complaint is found at docket entry 32 in the adverse proceeding, 14-ap-802.

Defendants did not have any other functioning officers, directors, or shareholders aside from Debtor.

Debtor also exercised significant control over Laura. Again, because of her health issues, Laura relied on Debtor, as well as her adult children, in all aspects of her daily life. *Id.* at 10. She did not have any income or substantial funds of her own. *Id*. at 10–11. Debtor's attorney filed for bankruptcy on Laura's behalf. *Id*. at 11.

Second, and perhaps most significantly, the undisputed facts show extensive commingling of funds between Debtor and Defendants. Prior to his bankruptcy, Debtor gave all of his money to Laura, who paid his personal bills for him. *Id.* at 11. Debtor did not have a checking or savings account, or credit card in his own name. *Id.* Laura also did not have any income or substantial funds of her own. *Id.* Debtor used Gemini's bank account to pay his and Laura's personal expenses, including cable bills, insurance and mortgage on Debtor and Laura's personal residence, gym membership fees, and the retainer for Debtor's bankruptcy attorney. *Id.* at 12–13. Debtor also used money from the Gemini account to pay the mortgage on another personal property. *Id*. at 13. Despite not being employed by AGS, Debtor and Laura periodically received paychecks from AGS and took money from AGS's bank account. *Id*. at 14.

Debtor and Defendants continued to commingle assets after Debtor filed for bankruptcy. After Debtor's Petition Date, he opened a DIP account. *Id.* at 16. At the same time, he also opened an account called the AGS Account. *Id.* at 17. Despite his legal obligation to deposit any earnings into his DIP Account, Debtor deposited his paychecks from AGS into the AGS Account. *Id.* Once his bankruptcy was converted to chapter 7, he withdrew his money from the DIP account and deposited the funds in either Gemini or AGS's Accounts. *Id.* at 16. Debtor also deposited his social security checks into the Gemini Account. *Id.* Debtor continued to use

money from the Gemini Account to pay his personal expenses including paying the mortgage on his personal residence, paying the water bill for his personal residence, and cashing checks to Debtor personally. *Id.* These undisputed facts show extensive, if not complete, commingling of funds between Debtor and Defendants.

The undisputed facts also establish the Corporate Defendants' failure to comply with corporate formalities. Gemini's business address was Debtor and Laura's home address. *Id.* at 21. While Defendants deny the legal conclusion of failing to maintain corporate formalities, they admit that they did not file income tax returns on behalf of Gemini for the years 2008–2012. *Id.* at 25. Defendants also admit Debtor used the Gemini Account to pay for AGS's business expenses. *Id.* at 18. For example, when AGS needed supplies, it would write a check to Debtor from the Gemini Account, Debtor would deposit those checks into the AGS Account and purchase supplies with a check from the AGS Account. *Id.* In addition, neither Debtor nor Laura were ever paid a salary by Gemini. *Id.* at 14. Instead, as explained above, they simply took money from Gemini's Account as they saw fit.

Taken together, these undisputed facts substantially show that Defendants were the alter egos of Debtor such that Defendants assets should be brought into the Debtor's bankruptcy estate. Likewise, these facts also show sufficient unity of interest and ownership such that reverse-piercing the Corporate Defendants' veils, *i.e.*, reaching through Debtor to obtain the assets of Defendants, is appropriate. *See In re Canopy Finc'l, Inc*, 477 B.R. 696, 703 (N.D. Ill. 2012) ("Illinois law permits reverse-piercing the corporate veil[.]"); *see also Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 521–22 (7th Cir. 1991). The fact that Debtor is not a shareholder of any Corporate Defendant does not preclude this conclusion. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) ("Under Illinois

13

law, it is possible for a non-shareholder to be found personally liable under a veil-piercing theory.") Defendants' objections to the bankruptcy court's rulings are overruled.

## CONCLUSION

For the above stated reasons, the Court overrules Defendants' objections and adopts the bankruptcy court's Proposed Findings of Fact and Conclusions of Law.

Dated: December 15, 2015

_____
SARA L. ELLIS
United States District Judge